IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

MARK ALLEN DEAL,

    Plaintiff,

V.                                        CIVIL ACTION NO. 3:07-0235

MICHAEL ASTRUE
Commissioner of Social Security,

    Defendant.

**FINDINGS AND RECOMMENDATION**

In this action, filed under the provisions of 42 U.S.C. §§405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his applications on February 1, 2005, alleging disability commencing January 1, 1981,[1] as a consequence of panic attacks and arm problems. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied

---

[1] Plaintiff's insured status expired March 31, 1986, and, for purposes of his application for disability insurance benefits, it was incumbent upon him to establish disability on or before that date. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971).

a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-nine years of age and had obtained a high school education. He has no past relevant employment experience. In his decision, the administrative law judge determined that plaintiff suffers from "carpal tunnel syndrome, post-traumatic and degenerative arthritis, a panic disorder without agoraphobia, and alcohol abuse," impairments which he found were severe. Concluding that plaintiff had the residual functional capacity for a limited range of medium level work, and relying on Rule 203.28 of the medical-vocational guidelines[2] and the testimony of a vocational expert, the administrative law judge found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. The administrative law judge observed that there was no medical evidence dating back to plaintiff's date last insured March 31, 1986, and that the earliest medical reports were from 2005. On this basis he concluded, obviously correctly, that plaintiff had failed to establish disability during the continuance of his insured states..

Dr. James Wagner saw plaintiff on February 14, 2005, however, he failed to record any physical findings except plaintiff's weight, blood pressure, which was high, temperature, height and visual acuity. He lists what are presumed to be conditions he is diagnosing, although that is not clear. These include anxiety, psoriasis, right knee pain and something illegible about the right elbow.

---

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 3.

2

Lisa Tate, M.A., performed a consultative psychological exam at the Commissioners's request on February 16, 2005. She observed plaintiff walked with a normal gait, maintained a normal posture and had good use of all limbs. Plaintiff reported experiencing unexpected episodes two to three times per month when he felt fearful and had difficulty breathing, got dizzy and perspired, among other symptoms. He related these episodes typically lasted thirty minutes and most occurred when he was around people. At that time medication was not being prescribed, nor was he receiving mental health treatment. He reported his mood was "fairly good," and Ms. Tate observed an euthymic mood with a broad and reactive affect. Memory was within normal limits and concentration was considered only mildly deficient. This examiner diagnosed panic disorder without agoraphobia and felt alcohol abuse should be ruled out based on plaintiff's report he drank six to twelve beers per week. Reported activities of daily living were taking care of his father while his sister was at work, taking care of his father's dogs and bringing in firewood. Weekly, he cuts firewood and does laundry and goes to the grocery store by himself.

Dr. Stephen Nutter examined plaintiff for the Commissioner on March 15, 2005. Among his findings were pain and tenderness in both shoulders, greater in the right; crepitus in both shoulders, the left elbow and both knees; pain and tenderness in both elbows with bony enlargement, fullness and reduced range of motion in the right elbow; pain, tenderness and restricted range of motion in the right knee; and, tenderness from T12 through L3, but with full range of motion, normal straight leg raising and no neurological abnormalities. Plaintiff was able to walk on his heels and toes and perform a tandem gait with complaints of knee pain. Although able to stand on the left leg alone, he was unable to stand on the right leg due to knee pain and could not squat. Dr. Nutter diagnosed arthralgia with post-traumatic and degenerative arthritis.

Plaintiff returned to Dr. Wagner on May 26, 2005, seeking medication for right knee pain and complaints of anxiety, arm pain, psoriasis and a hernia. Dr. Wagner again made almost no notations on the exam portion of the report and wrote a diagnosis of arthritis and anxiety. He prescribed Voltaren for arthritis and Paxil for anxiety. Plaintiff began treatment at the Carl Johnson Medical Center on August 22, 2005, with complaints of nerve problems and numbness in two fingers of the left hand and one on the right. Exam revealed high blood pressure and an anxious appearance but plaintiff had full range of motion, presumably of the fingers, and was "grossly intact" neurologically. The diagnosis was anxiety with difficulty sleeping, hypertension, with medication prescribed for both, and psoriasis, which was not treated. At a September 12 follow-up, plaintiff's concerns were mainly about anxiety, and he reported he could not function daily because of it. Physical exam revealed he was anxious, and additional medications were prescribed for this problem and for hypertension. On October 10, he reported his nerves were better and Dr. Aman, the treating physician, prescribed medication for psoriasis. On December 19, 2005, plaintiff again reported paresthesia in the right fourth and fifth fingers as well as worsening psoriasis. Dr. Aman diagnosed carpal tunnel syndrome and indicated she would refer him, presumably for further evaluation, when he was ready. She also prescribed ibuprofen for osteoarthritis.

Dr. Aman apparently performed a physical exam of plaintiff on January 4, 2006, to assist him in obtaining a medical card. At that time, plaintiff was reporting urinary problems and exam revealed an enlarged prostate. Anxiety was also observed with poor eye contact and a somewhat flat affect. On April 10, 2006, Dr. Aman mainly observed problems with psoriasis and nasal edema and diagnosed allergic rhinitis, benign prostate hypertrophy and anxiety as well as psoriasis. On June 5, 2006, plaintiff reported having numbness in the outside fingers of both hands

and that the numbness in the right hand would extend up to the elbow. There are no exam findings on this report, just a diagnosis of carpal tunnel syndrome, benign prostatic hypertrophy, arthritis, hypertension, hyperlipidemia and anxiety.

Plaintiff was seen the following day by a urologist for evaluation of his prostate, which was reported to be normal. Although this is the extent of the medical evidence, an employee for plaintiff's counsel informed the Appeals Council in a January 11, 2007 letter that plaintiff had reported to the office just that day that he had been diagnosed with prostate cancer and had undergone surgery on October 2, 2006. Counsel's legal assistant informed the Appeals Council she was requesting records from Dr. Jensen's office; however, it does not appear those records were submitted.

State agency medical advisors reviewed the evidence and expressed opinions as to plaintiff's residual functional capacity on April 5, 2005 and October 18, 2005. Both found he could perform a full range of medium level work. While the administrative law judge concluded these opinions were supported by the evidence and adopted them, he also added a limitation on use of the hands for fine manipulative activities, which he found plaintiff could perform less than constantly.

The state agency psychologists who reviewed the evidence concluded that a "severe" mental impairment was not established. The administrative law judge disagreed, however, and found plaintiff's panic disorder without agoraphobia did "significantly" limit his mental ability to do basic work activities[3] by causing him to be limited to "more simple routine work without public contact or close work with co-workers." These limitations would clearly take into account plaintiff's anxiety and discomfort around crowds and strangers. As the administrative law judge

---

[3] See, 20 C.F.R. §§404.1520(c), 416.920(c).

noted, plaintiff's anxiety did respond to medication which lends further support to his finding that this condition was not disabling. The administrative law judge's residual functional capacity determination is clearly supported by substantial evidence.

While plaintiff complained of significant limitations on his daily activities due to pain and anxiety, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded that his testimony was exaggerated and his credibility poor, in part because he had reported to examiners he had the ability to care for his father and his father's pets on a daily basis as well as carry in firewood, cook simple meals and take care of hygiene needs. Weekly, he is able to cut firewood, mow grass in spring and summer, do laundry and grocery shop. The administrative law judge also pointed out plaintiff's lack of treatment for anxiety by a mental health professional and the stability of his condition with medication. Similarly, though plaintiff has been diagnosed with osteoarthritis and carpal tunnel syndrome, there is no indication of further diagnostic studies or treatment for these conditions other than the prescription of medication. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of his functional capacity and overall medical condition, a vocational expert testified that there were significant numbers of medium, light and sedentary jobs in the national economy which plaintiff could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's

findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner should be affirmed.

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED: July 22, 2008

*[signature: Maurice S. Taylor, Jr.]*

MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE